UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- X
                                                         :
KELLY CRISCI, on behalf of herself and all               :
others similarly situated,                               :      CASE NO. _____
                                                         :
                      Plaintiff,                         :      CLASS ACTION COMPLAINT
                                                         :
v.                                                       :      JURY TRIAL DEMANDED
                                                         :
BOOKTIX INC.,                                            :
                                                         :
                      Defendant.                         :
                                                         :
-------------------------------------------------------- X
```

Plaintiff Kelly Crisci, by and through her counsel, Denlea & Carton LLP, respectfully

files this Class Action Complaint on behalf of herself and a class of similarly-situated consumers

in New York against Defendant BookTix Inc. ("Defendant"). Plaintiff makes the following

allegations based on the investigation of her counsel, and based upon information and belief,

except as to those allegations specifically pertaining to herself, which are based on her personal

knowledge.

## NATURE OF THE ACTION

1.      This action seeks to redress the illegal practice of Defendant in concealing

processing fees until the final moments of checkout in violation of New York's "all-in pricing"

mandate. Defendant creates and operates virtual box offices for local community performances,

including dance recitals, school performances, and small community theaters. While Defendant

touts itself as benefiting the arts community and promoting artistic expression in young children,

it surreptitiously tacks on fees to tickets that are only revealed after patrons have selected seats

for local performances and placed the seat-specific ticket into the virtual shopping cart. For

many of these small, local performances, there is no alternative platform from which to purchase

tickets, forcing patrons to pay the previously undisclosed fees or forego attending the performances altogether.

2.      Defendant's practice of adding fees only at the end of the ticket purchasing process is in direct contravention of New York's law governing online ticket sales.  In response to the rising tide of hidden fees, the State of New York amended its law to ban late disclosure of ancillary fees, and mandated "all-in pricing" throughout the ticket purchasing process. Specifically, New York's Arts and Cultural Affairs section 25.07(4) requires that "[e]very operator or operator's agent of a place of entertainment . . . or platform that facilitates the sale or resale of tickets *shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket*," and that "[s]uch disclosure of the total cost and fees shall be displayed in the ticket listing *prior to the ticket being selected for purchase*."  N.Y. ACAL § 25.07(4) (emphasis added).  In other words, "*[t]he price of the ticket shall not increase during the purchase process*."  *Id.* (emphasis added).  This law has been effective since August 29, 2022.

3.      Despite this prohibition, Defendant has continued its impermissible practice of concealing the true cost of tickets across the State of New York, raking in fees that can be greater than 15% of the cost of the ticket itself, radically increasing the total price of tickets for consumers fighting for prime seats in small venues to see loved one's performances.

4.      In or about April of 2024, Plaintiff sought to purchase tickets for close family friend's young daughter's performance in a local school production in Newburgh, New York. The "box office" for the small production was developed, managed, and operated exclusively by Defendant.  Despite repeat representations that "All Tickets are $10 tickets," Plaintiff was surprised by a $1.50 fee revealed only after she had selected the event, chosen the date and time,

carefully picked her seat, and placed the ticket in her shopping cart. Faced with the choices to pay the previously undisclosed fee and attend the performance, or miss the performance altogether and disappoint a young loved one, Plaintiff paid the unexpected fee.

5.      By this action, Plaintiff and her fellow Class members seek to recover actual and/or statutory damages, attorneys' fees and costs, and injunctive relief under New York Arts and Cultural Affairs Law Section 25.33.

## PARTIES

6.      Plaintiff Kelly Crisci is an individual who resides in Newburgh, New York. In April 2024, she purchased a ticket to see a school performance of "Moana JR." at a school in Cornwall, New York using Defendant's ticketing system. The ticketing transaction she viewed was substantially similar to the transaction depicted in this Complaint.

7.      Defendant BookTix Inc. is a Delaware corporation with its principal place of business in East Brunswick, New Jersey. Defendant promotes, sells, markets, and distributes its online ticketing platform in New York and throughout the United States.

8.      Upon information and belief, Defendant is not registered to do business in the State of New York, despite conducting business throughout the State of New York.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (a) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (b) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A). Upon information and belief, Defendant sold at least 100,000 tickets to events in New York through its

ticketing platform during the applicable class period,[1] and is liable for a minimum of fifty dollars in statutory damages for each ticket sold.  *See* N.Y. ACAL § 25.33.

10.    The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the parties are diverse and the amount in controversy exceeds the requisite threshold.

11.    This Court may exercise jurisdiction over the Defendant because it has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its online ticketing platform, thus rendering jurisdiction by this Court proper and necessary.  Defendant also sells tickets to events and performances taking place in New York.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## FACTUAL BACKGROUND

### I.    New York's All-In Pricing Mandate

13.    In response to rising concerns about potentially unfair, deceptive, and anti-consumer practices occurring in the live event ticketing industry, New York adopted changes to its Arts and Cultural Affairs Law to provide more transparency to consumers and address rampant "nickel and diming" of consumers with surprise fees tacked onto ticket prices.  Effective as of August 29, 2022, New York Arts and Cultural Affairs Law Section 25.07(4) mandates that:

> [e]very operator or operator's agent of a place of entertainment . . .
> or platform that facilitates the sale or resale of tickets ***shall disclose***

---

[1] Defendant has advertised on its website that it has operated for "tens of thousands of performances," with "millions and millions of tickets sold."  *See* www.booktix.com/about/.

> ***the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket***, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser.

N.Y. ACAL § 25.07(4) (emphasis added).

14.     This "all-in pricing" mandate also requires that "[s]uch disclosure of the total costs and fees shall be displayed in the ticket listing ***prior to the ticket being selected for purchase***." *Id.* (emphasis added).

15.     New York law further requires that "[t]he price of the ticket ***shall not increase during the purchase process***." *Id.* (emphasis added).

16.     Following enactment of the revised ticketing law, the New York Division of Licensing Services offered clarification of New York's all-in pricing,[2] confirming that, under New York law, (i) the ticket purchasing process begins once a consumer visits a ticket platform and first sees a list of seat prices, and (ii) the ticket price cannot change from the first time the consumer sees the price to when the consumer selects the ticket for purchase.

17.     The New York Department of State offered further guidance on all-in pricing,[3] confirming that "if the consumer selects to purchase a ticket electronically, at the start of the transaction, the total ticket price shall not increase during the period it takes the consumer to purchase the ticket (*e.g.*, finish the online transaction.)"  The New York Department of State further clarified that "[t]he 'All-In Price' must be disclosed to the consumer **before** the consumer selects the ticket for purchase." *Id.* (emphasis in original).

---

[2] *See* https://dos.ny.gov/system/files/documents/2023/06/response-letter-redacted.pdf.
[3] *See* https://dos.ny.gov/system/files/documents/2023/06/ticket-reseller-reminder.pdf.

**II.     Defendant Markets Its Ticketing Platform to Small, Local Venues**

18.     Defendant owns and operates an online event ticketing platform by which

schools, theaters, dance studios, and other live-event operators can create a virtual "box office"

to sell tickets to events.  Defendant advertises on its website, www.booktix.com, that it began

offering its platform first to schools, then expanded to community theaters, dance studios, and

community fundraising events.

19.     Unlike professional events, such as international concerts, operators who deploy

Defendant's ticketing platform are typically selling a very limited number of tickets to small

venues, with no alternative option to purchase tickets electronically and no secondary market for

ticket resellers.  Purchasing an electronic ticket through Defendant's ticketing platform is often

the only way to see one's own child perform in a school musical, or twirl in a long-awaited

dance recital.

20.     Defendant acknowledges that the types of small-scale, local events that

Defendants markets to, such as dance recitals, have "a limited number of seats available," and

that attendees are "often made up of parents and other family members."  In Defendant's own

words, "[j]ust imagine how disappointed one of your aspiring ballerinas would be if their family

couldn't purchase tickets to their performance."  *See* https://www.booktix.com/dance-recital-

ticketing/.  The inference is plainly, "isn't seeing your offspring perform worth paying a hidden

premium?"  This is exactly the "gotcha" tactic that the statute was designed to eradicate.

21.     Additionally, there is a sense of urgency to secure "good" seats, as family

members typically wish to take photos and videos of cherished performances by young children.

22.     Defendant boasts that it has operated for "tens of thousands of performances,"

with "millions and millions of tickets sold."  *See* www.booktix.com/about/.

23.     Defendant advertises itself as a cost-effective, virtually free ticketing platform for operators, proclaiming that it offers a "robust ticketing solution that is free to your program." *See* www.booktix.com.  Rather than collect setup or start-up fees from the event operators, Defendant instead collects a so-called "low, flat fee charge per ticket" from consumers, plus a percentage of the ticket price.  *See* https://www.booktix.com/how-it-works/; *see also* https://www.booktix.com/pricing/ ("Our system is FREE to you!").

24.     Given the kinds of small-scale events where Defendant deploys its ticketing system, the flat fee alone can sometimes be a significant portion of the total ticket price.

## III.     Defendant's Ticketing Platform Does Not Display All-In Pricing in Violation of New York's All-In Pricing Mandate

25.     In direct contravention of New York's all-in pricing mandates, Defendant does not disclose its fees or the total ticket price until after consumers have selected tickets for purchase, chosen seats at the venue, and placed the tickets into a virtual shopping cart for checkout.

26.     Rather, at all times prior to placing a ticket into the shopping cart, Defendant lists only the base price for every type of ticket; there is no mention of fees and no reference to the "all-in price" of the ticket until the end of the ticket purchasing process.

27.     Accordingly, the price displayed on the earliest screens of Defendant's ticket purchasing platform changes (or, more exactly, increases) after the ticket is placed into a consumer's shopping cart for purchase.

28.     Upon information and belief, Defendant creates unique websites for each event utilizing its ticketing platform.  Upon information and belief, the ticket purchasing process – including the failure to list all-in ticket prices at the first instance, the concealment of Defendant's fees until after tickets have been selected, and changing ticket prices – are uniform

7

across Defendant's ticketing platform, regardless of which operator is utilizing the platform for any given event or performance.

29.     Upon information and belief, Defendant's ticketing platform also limits the time a consumer has to purchase tickets to protect against the possibility that multiple people purchase the same seat for a venue.  Defendant does so by timing transactions and terminating ticket purchases that would allow the purchaser adequate time to consider capitulating to the hidden fee.  So long as a consumer has added a seat to their shopping cart, the ticket will be unavailable to other consumers.  After a few minutes pass, however, the transaction will terminate and the ticket will be removed from the shopping cart, causing the original consumer to lose their selected seat.  Upon information and belief, the timer is uniform across Defendant's ticketing platform, regardless of which operator is utilizing the platform for any given event or performance.

30.     Given the limited size of the events wherein Defendant's ticketing system is used – not to mention that many recitals and performances are only a single day at a single time – a few seconds' delay in purchasing a ticket could mean the difference between a prime center seat with a clear view of the entire stage, and a seat in the back corner (or no seat at all).

## IV.     Defendant Charged Plaintiff an Additional 15% Fee That Was Not Disclosed Until After She Placed a Ticket in Her Virtual Shopping Cart

31.     In or about April 2024, Plaintiff was invited to purchase a ticket to see a close family friend's elementary school-aged daughter perform in a local school production entitled "Moana JR."  Tickets for the performance were sold on Defendant's ticketing platform, available at https://ccmsdrama.booktix.net/.  Upon information and belief, there was no alternative means to purchase a general admission ticket to this performance.

32.     Upon accessing Defendant's virtual box office for the school performance, Plaintiff learned that "All Tickets are $10 tickets."  A 15-minute timer counted down the time in the upper lefthand corner.  Upon information and belief, at the expiration of the timer, an incomplete ticket purchase would be cancelled and any selected seats would be lost.  A screenshot of the first page of the virtual box office for the Moana JR. performance is below:[4]



⏱ 14:42 (/cart.php)

(https://booktix.com)

The Willow Ave PTO Drama Club Presents...

Moana JR.

Friday April 19, 2024 at 6:00pm

Saturday April 20, 2024 at 12:00pm

All Tickets are $10 tickets

If you need to purchase a wheelchair accessible seat, please email John Hines-jhines@cornwallschools.com.

Interested in tickets to the CCHS Drama Club's musical *Something Rotten!*? Performances April 11-14
Use the following link: cchsny.booktix.net (https://cchsny.booktix.net/)

🛒 SHOPPING CART

Donation Amount

Select Department...

APPLY

Cart Total

$0.00

Ticketing Provided By

BookTix
ONLINE TICKET SOLUTION

---

[4] The images contained in this Complaint concerning the "Moana JR." performance are representative of the screens Plaintiff saw when purchasing her tickets as detailed herein.  Highlighting has been added for emphasis.

33.    Once Plaintiff clicked to continue with a ticket purchase, she was presented with a new screen that listed two performance dates with showtimes, and contained links to purchase tickets for each performance.  Again, Defendant's website listed "All tickets are $10 tickets."  A representative screenshot of the second webpage is below:

⏱ 14:06 (/cart.php)

(https://booktix.com)

The Willow Ave PTO Drama Club Presents…

# Moana JR.

Friday April 19, 2024 at 6:00pm

Saturday April 20, 2024 at 12:00pm

All Tickets are $10 tickets

If you need to purchase a wheelchair accessible seat, please email John Hines-
jhines@cornwallschools.com.

Interested in tickets to the CCHS Drama Club's musical *Something Rotten!*? Performances April 11-14
Use the following link: cchsny.booktix.com (https://cchsny.booktix.net/)

| 4/19/24 AT 6:00 PM | MOANA JR. | PURCHASE |
| 4/20/24 AT 12:00 PM | MOANA JR. | PURCHASE |

Cornwall Central Middle School
()
❓ Email and Phone Support (/contact)
BookTix.com Privacy Policy (https://booktix.com/privacy) | BookTix.com Refund Policy
(https://booktix.com/refund-policy)
© 2024 BookTix.com - All Rights Reserved

34.    Plaintiff selected the performance for April 19, 2024 at 6:00 p.m., and was taken to a page to select seating.  This webpage contained an overview of the entire venue, and permitted Plaintiff to select which area of the venue she would like to sit in, and then select her individual seat.  Once again, Defendant's platform represented that "All Tickets are $10 tickets." A representative screenshot of the seating page is below:



35.    Upon selecting her seat, Plaintiff was shown a new screen prompting her to add her ticket to her virtual shopping cart.  On this page, Defendant's platform once again repeated that "All Tickets are $10 tickets," and also displayed that Plaintiff's selected seat was a "General Ticket - $10.00."  A representative screenshot of the "Add to Cart" page is below:

⊙ 13:24 (/cart.php)

(https://booktix.com)

## The Willow Ave PTO Drama Club Presents...

# Moana JR.

### Friday April 19, 2024 at 6:00pm

### Saturday April 20, 2024 at 12:00pm

All Tickets are $10 tickets

If you need to purchase a wheelchair accessible seat, please email John Hines-
jhines@cornwallschools.com.

Interested in tickets to the CCHS Drama Club's musical *Something Rotten!*? Performances April 11-14
Use the following link: cchsny.booktix.net (https://cchsny.booktix.net/)

## Moana Jr.

### Friday, Apr 19, 2024 - 6:00 pm

Please select the pricing level from the drop-down menus below for each ticket you wish to purchase.

**Cntr** Row Q Seat 105                    General Ticket - $10.00 ⌄

ADD TO CART

Cornwall Central Middle School
()
❓ Email and Phone Support (/contact)
BookTix.com Privacy Policy (https://booktix.com/privacy) | BookTix.com Refund Policy
(https://booktix.com/refund-policy)
© 2024 BookTix.com - All Rights Reserved

36.     Upon adding the ticket to her shopping cart, Plaintiff was then redirected to a

page showing her, for the very first time in the entire process, that the total price for the ticket

would not be $10.00, but rather would be $11.50, or a 15% increase from the base ticket price.

Ironically, Defendant's website continued to reflect that "All tickets are $10 tickets" above the

shopping cart total of $11.50.  A representative screenshot of the shopping cart page is below:

(https://booktix.com)

## The Willow Ave PTO Drama Club Presents...

# Moana JR.

### Friday April 19, 2024 at 6:00pm

### Saturday April 20, 2024 at 12:00pm

All Tickets are $10 tickets

If you need to purchase a wheelchair accessible seat, please email John Hines-
jhines@cornwallschools.com.

Interested in tickets to the CCHS Drama Club's musical *Something Rotten!?* Performances April 11-14
Use the following link: cchsny.booktix.net (https://cchsny.booktix.net/)

1 ticket has been added to your cart.

🛒 SHOPPING CART

**MOANA JR.**
**Fri Apr 19, 2024 at 6:00 pm**

Sec **Center** Row **Q** Seat **105**
Ticket Type **General Ticket**
Price $10.00                          Fees $1.50
Total $11.50                          ✖

Donation Amount

Select Department...                                                    ⌄

APPLY

37.     With many of the best seats already secured by others, Plaintiff worried that any delay in completing her purchase would result in her having to settle for a lesser seat, possibly in the very back row or very front row, or at the edge of the theater, despite paying the same amount as the more centrally-located seats.  The sense of urgency to complete the purchase immediately, regardless of the surprise fees, was amplified by the timer ticking down in the upper righthand corner, and the fact that most seats had already been purchased.

38.     Plaintiff did not believe she would have time to call the school directly (let alone go to the school in person) to inquire as to other means of purchasing tickets before the timer would expire and she lost her chosen seat.  Upon information and belief, even had Plaintiff been able to contact the school directly, she would have been redirected back to Defendant's ticketing platform to purchase tickets with even fewer seating options available to her (if the performance had not been sold out completely by then).

39.     Unwilling to forgo the opportunity to see her close family friend's young daughter perform, Plaintiff paid the full $11.50 using Defendant's platform.

40.     Upon information and belief, Plaintiff's experience with Defendant is representative of how Defendant's platform works across the State of New York with respect to its failure to display all-in pricing, and the increasing ticket prices after seats have been selected and the tickets have been added to the virtual shopping cart.

**IV.     Other Ticketing Platforms Openly Disclose All-In Pricing in
Sharp Contrast to Defendant's Ticketing Platform**

41.     Other ticketing platforms that operate in the State of New York make a striking comparison against Defendant's deceptive ticketing platform, and showcase how New York's all-in pricing mandate is intended to function to protect consumers from surprise fees.

42.     For example, ticket reseller Eventbrite, Inc. ("Eventbrite"), in compliance with
New York law, presents the total price for tickets to events in New York at every step of the
ticket purchasing process, including from the initial selection of an event to see details about the
available ticket types.  From this initial event screen, Eventbrite clearly delineates not only the
total ticket price but also how much of that price constitutes fees.  An example of Eventbrite's
transparent pricing is below:



43.     Eventbrite's ticket selection screen clearly lists the total price, which is not an
even dollar amount, and delineates how much of that ticket price constitutes a fee.  This is in
sharp contrast to Defendant's ticketing platform that repeats a falsely deflated ticket price

throughout the ticket purchasing process, and only reveals the true total cost of the ticket – fees and all – after the ticket has already been selected, seat chosen, and the ticket added to the consumer's virtual shopping cart.

44.    Similarly, Ticketmaster Entertainment LLC ("Ticketmaster") has a pop-up notification whenever a consumer selects an event taking place in New York that informs the consumer that the event is using "All-In Pricing."  The consumer cannot select a ticket type or choose a seat until after clicking "Accept & Continue" on the pop-up notification.  An example of the pop-up notification is below:



45.    Once the consumer accepts the pop-up notification, the consumer is then permitted to select a ticket type, with the pricing reflecting the total ticket price inclusive of all fees.  See below:



46.     Once a ticket type is selected, the consumer is again shown the same total ticket price, with clarification as to how much of that total price constitutes fees, and what type of fees. See below:



47.     Throughout the process of purchasing tickets for an event through Ticketmaster, the all-in price is reflected, and does not change throughout the process.  Again, Ticketmaster's ticket purchasing process is drastically different from Defendant's, wherein the price of the ticket changes over the course of the purchase, often by significant amounts.

## <u>CLASS DEFINITION AND ALLEGATIONS</u>

48.     Plaintiff brings this action on behalf of herself and all other similarly situated

consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure,

and seeks certification of the following class (the "Class"):

> All consumers who, on or after August 29, 2022, purchased
> electronic tickets online to any event in any location in the State of
> New York using Defendant's ticketing platform.  Excluded from the
> Class are Defendant, its parents, subsidiaries, affiliates, officers, and
> directors, and judicial officers and their immediate family members
> and associated court staff assigned to this case.

49.     **<u>Numerosity.</u>**  This action is appropriately suited for a class action.  The members

of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff

is informed, believes, and thereon alleges, that the proposed Class contains thousands of

purchasers who have been damaged by Defendant's conduct as alleged herein.  The precise

number of Class members is unknown to Plaintiff.

50.     **<u>Existence and Predominance of Common Questions of Law and Fact.</u>**  This

action involves questions of law and fact common to the Class.  The common legal and factual

questions include, but are not limited to, the following:

- Whether Defendant failed to disclose the total cost of
  tickets, including all ancillary fees, prior to tickets being
  selected for purchase in violation of New York Arts &
  Cultural Affairs Law § 25.07(4);

- Whether the displayed price of Defendant's tickets
  increases during the purchase process in violation of New
  York Arts & Cultural Affairs Law § 25.07(4);

- Whether Defendant failed to disclose its service charge in a
  clear and conspicuous manner in violation of New York
  Arts & Cultural Affairs Law § 25.07(4); and

- Whether, as a result of Defendant's misconduct, the Class
  is entitled to monetary and statutory damages.

51.  **Typicality.**  Plaintiff's claim is typical of the claims of the members of the Class, because, *inter alia*, all Class members sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to disclose the total cost of tickets, inclusive of fees, throughout the online ticket purchase process.  Moreover, the named Plaintiff's claims are typical of the Class members' claims, as Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

52.  **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel who are adept, sophisticated, and experienced in the field of complex consumer class action litigation, and have adequate resources to fully and zealously advocate on behalf of the Class.  Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

53.  **Superiority.**  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Furthermore, even if the Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised in this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and

comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

54.    Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described herein.  Unless a class is certified, Defendant will be allowed to profit from its illegal practices, while Plaintiff and the members of the Class will have suffered damages.  Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be harmed.

55.    Defendant has acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

### FIRST CAUSE OF ACTION
### New York Arts & Cultural Affairs Law § 25.07

56.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

57.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

58.    Defendant is a "licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets" to a "place of entertainment," because Defendant owns, operates, or controls a ticketing platform, which is a place where consumers can purchase tickets to local performances and recitals.  "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a theatre . . . or other place where performances, concerts, exhibits, athletic games, or contests are held for which an entry fee is charged."  N.Y. ACAL § 25.03(6).

59.     Defendant violated New York Arts and Cultural Law Section 25.07(4) by failing to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket . . . prior to the ticket being selected for purchase." N.Y. ACAL § 25.07(4). Defendant does not disclose its fees until after the ticket is placed into the consumer's shopping cart for purchase.

60.     Defendant also violated New York Arts and Cultural Law Section 25.07(4) by increasing the price of tickets during the purchase process.

61.     Defendant's fee is an "ancillary fee[] that must be paid in order to purchase the ticket." N.Y. ACAL § 25.07(4).

62.     In or about April 2024, Plaintiff purchased a ticket using Defendant's platform and was forced to pay Defendant's $1.50 fee. Plaintiff was harmed by paying this illegal fee.

63.     On behalf of herself and members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages and/or statutory damages, and reasonable costs and attorneys' fees. *See* N.Y. ACAL § 25.33.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment and relief against Defendants as follows:

(i)     Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class Representative, and designating the undersigned as Class Counsel;

(ii)    An order declaring that Defendant's conduct violates the statutes referenced herein;

(iii)   An order awarding against Defendant compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(iv)    An order awarding Plaintiff and the Class prejudgment interest on all amounts awarded;

(v)    An order of restitution and all other forms of equitable monetary relief;

(vi)    Injunctive relief as pleaded, or as the Court may deem proper;

(vii)    An order awarding Plaintiff and the Class interest, costs, and attorneys' fees; and

(viii)    An order awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff respectfully requests a trial by jury as to all issues so triable.

Dated: May 13, 2024
       White Plains, New York

                         **DENLEA & CARTON LLP**

                         James R. Denlea
                         Jeffrey I. Carton
                         Amber T. Wallace
                         2 Westchester Park Drive, Suite 410
                         White Plains, New York 10604
                         Telephone:  (914) 331-0100
                         Facsimile:  (914) 331-0105
                         jdenlea@denleacarton.com
                         jcarton@denleacarton.com
                         awallace@denleacarton.com

                         *Attorneys for Plaintiff*